**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 07-80900-CIV-MIDDLEBROOKS/JOHNSON

UNITED STATES OF AMERICA,
*ex rel.* LAIKA SANCHEZ,
      Plaintiffs,

v.

LYMPHATX, INC., PAMELA COHEN,
and JACOB COHEN,

      Defendants.

_____/

**CLOSED**
**CIVIL**
**CASE**

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DE 19)

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss First Amended Complaint (DE 19), filed on May 27, 2009. Plaintiff/Relator responded in opposition (DE 24), to which Defendants replied (DE 25). Having carefully reviewed the filings and record, and being advised in the premises, I shall grant Defendants' Motion for the reasons stated below.

### I. Background

Plaintiff Laika Sanchez ("Sanchez") is a *qui tam* relator, seeking recovery on behalf of the United States pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, ("FCA," or "the Act").[1] Sanchez, a former employee of Lymphatx, Inc., ("Lymphatx") alleges that Defendants[2] Lymphatx, Pamela Cohen, and Jacob Cohen: (1) intentionally, falsely billed Medicare for lymphadema services

---

[1] The FCA creates a cause of action against any individual who submits a false or fraudulent claim for payment to the United States Government. The action can be brought by the Attorney General or by private individuals on behalf of the government under the Act's *qui tam* provision.

[2] Lymphatics Plus of Boca Raton, Inc., was the former name of Lymphatx, and was a named plaintiff in Sanchez's original complaint. *See* DE 13. The First Amended Complaint omits any mention of the company. Thus, Lymphatics Plus of Boca Raton, Inc., is not a party to this action. *See* DE 15.

1

performed by licensed massage therapists ("LMTs"); (2) intentionally, falsely filed certifications stating that they were in compliance with applicable Medicare regulations and standards; (3) intentionally, falsely billed Medicare for treatments and/or other services not rendered; (4) failed to collect Medicare co-payments required by law; and (5) unlawfully terminated Sanchez' employment (retaliatory discharge). The defendants have moved to dismiss the First Amended Complaint (hereinafter "Complaint") pursuant to Rule 12(b)(6) and 9(b) on the grounds that the relator has failed to state a claim, and failed to plead Counts One through Four with the requisite level of particularity.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Gilmore v. Day*, 125 F.Supp.2d 468, 471 (M.D.Ala. 2000). For the purposes of such motion, the complaint is construed in the light most favorable to the plaintiff, and all factual allegation are accepted as true. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Aschroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Additionally, Rule 9(b)'s heightened pleading requirement is applicable to False Claims Act actions. *See U.S. ex rel. Clausen v. Lab. Chem. Lab. Corp. of Am.*, 290 F.3d 1301, 1309-10 (11th

2

Cir. 2002). Rule 9(b) requires particularity when pleading "fraud or mistake." *See Iqbal*, 129 S.Ct. at 1954. This requirement is to be harmonized with the general "short and plain statement of the claim" mandate in Rule 8. *See id.* (citations omitted). According to the Eleventh Circuit,

> Rule 9(b) may be satisfied if the complaint sets forth: (1) precisely what [false or fraudulent] statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

> *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted).

It is with these legal standards in mind that I analyze the Complaint at bar.

## III. Discussion

### A. Written Consent of the Attorney General is Not Required for Involuntary Dismissal

As an initial matter, I note that, pursuant to Section 3730(b)(1) of the FCA,[3] an action by a private person "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). Although not expressly established in this Circuit, the Attorney General's right under Section 3730(b)(1) is applicable solely to voluntary dismissals. *See U.S. ex rel. Eisenstein v. City of New York*, 129 S.Ct. 2230, 2234 (2009) (noting that, if the United States declines to intervene, it is limited to exercising specific rights such as "vetoing a relator's decision to voluntarily dismiss the action, § 3730(b)(1)"); *see also U.S. ex rel. Mergent Srvc. v. Flaherty*, 540 F.3d 89, 91 (2d Cir. 2008) ("While the False Claims Act appears to bar dismissal of *qui tam* actions absent the Attorney General's consent, we have previously construed this provision to apply 'only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the False Claims Act, and not where the court orders dismissal.'" (quoting *Minotti v.*

---

[3] And acknowledged in the Judicial Order dated January 5, 2009 (DE 12).

*Lensink*, 895 F.2d 100, 103 (2d. Cir. 1990))); *Brown v. Sherrod*, 284 Fed.Appx. 542 (10th Cir. 2008) (holding that consent of the Attorney General was not required for dismissal of FCA claim); *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 158 (5th Cir. 1997) (mentioning that requiring government consent to involuntary dismissal raises separation-of-power concerns).

## B. The First Amended Complaint Fails to State a Claim

### i. Counts One Through Four are Insufficiently Pled Pursuant to Rule 9(b)

#### a. The Parties' Positions

In support of its Motion to Dismiss (DE 19), Defendant argues that (1) Sanchez, during her five months of employment as an office manager, was not involved in submitting bills to Medicare nor was she authorized to access billing information; (2) Jacob Cohen is not a proper party to this litigation; though he is the husband of Lymphatx owner Pamela Cohen and she has designated him an officer/director, there are no factual allegations of his wrongdoing, and he has full-time employment elsewhere (as an assistant public defender); (3) Count Four (failure to collect required Medicare co-payments) fails to account for other sources of payment for the 20% co-payment of Medicare Part B insurance, such as supplemental insurance ("medigap"), Medicaid, and/or group retirement policies; (4) Count Three (billing for services not rendered) fails to account for the Current Procedural Terminology ("CPT") code practice, which permits billing in 15-minute increments;[4] (5) Counts One and Two (intentionally submitting false bills and filing false certifications) merely state that Sanchez found documentation that Defendants billed for services performed by three licensed

---

[4] E.g., a March 2000 memorandum issued by the Health Care Financing Administration states, "For any single CPT code, providers bill a single 15-minute unit for treatment greater than or equal to 8 minutes and less than 23 minutes." *See* DE 19, p. 10 (and references cited therein). Thus, a 15-minute billing unit may be appropriate for a 10-minute treatment, a 17-minute treatment, a 22-minute treatment, etc.

massage therapists,[5] but provide no supporting factual averments; and (6) Count Five (retaliatory discharge) does not specify any "unlawful actions" or establish protected activity. *See* DE 19. Defendants assert that the claims in the Complaint are "nothing more than conjecture and conclusion" and fail to provide "a single, concrete example." DE 19, pp.9, 11.

Responding in opposition to Defendants' Motion (*see* DE 24), Sanchez summarizes her complaint and maintains that she has met her burden because "[i]n reading the complaint, there are many details in all 5 counts which support the allegations that state a claim upon which relief can be granted." *Id.* at 4. Sanchez argues that Rule 9(b) is satisfied because she has "personal knowledge" and provides a complaint that is "very specific in not only laying out the scheme, but in detailing the specific fraud committed by defendants based on the relator's observations." *Id.* at 5-6. Sanchez further states that defendants must file an answer and engage in discovery because she has named the specific licensed massage therapists (Tova Spodek, Tamara Kralick, and Carlos Ospina) who were complicit in Defendants' alleged wrongdoing, identified relevant Medicare standards, and provided details about how Defendants violated the Medicare standards. Finally, Sanchez argues, "the Florida courts are leaning toward the notion that as long as some of the claims are pled with specificity to satisfy the requirements of Rule 9(b), then the entire complaint is proper regarding specificity." *Id.* at 24 (citing *U.S. ex rel. Longest v. Dyncorp*, 2006 WL 47791 (M.D.Fla. 2006)).[6]

---

[5] Medicare reimburses for lymphedema treatment conducted by occupational therapists, physical therapist assistants, and/or speech/language therapists, but not for lymphedema treatment conducted by licensed massage therapists.

[6] *Longest*—non-binding, persuasive authority—fails to support Sanchez's arguments. Though the court did note that, to satisfy Rule 9(b), the plaintiff did not have to provide particularity as to every element of every alleged scheme, the plaintiff had alleged ten schemes - many with multiple sub-schemes - and the court found that the plaintiff "ha[d] provided far more than mere conclusory allegations [about defendant's alleged violations of 31 U.S.C. §§ 3729(a)(1) and (2)] . . . as [s]he routinely provide[d] specific examples, complete with dates, employee initials, and amounts" demonstrating the defendant's fraudulent conduct. *See id.* at 4. The detail and level of specificity of the pleading in *Longest* is quite different than the one at bar.

### b. Discussion

Dismissal of the Complaint is warranted as it clearly fails to comply with Rule 9(b). In order to state a claim under the FCA, a plaintiff must plead three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *U.S. ex rel. Barys v. Vitas Healthcare Corp.*, 298 Fed.Appx. 893, 894 (11th Cir. 2008) (quoting *U.S. ex rel. Walker v. R&F Prop. of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005)). Because Rule 9(b)'s heightened requirements for pleading fraud apply, a relator must plead "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 894-95 (quoting *U.S. ex rel. Clausen v. Lab. Chem. Lab. Corp. of Am.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002)); *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006). In addition, the complaint must contain "some indicia of reliability ... to support the allegation of *an actual false claim* for payment being made to the Government." *Barys*, 298 Fed.Appx. at 894 (quoting *Clausen*, 290 F.3d at 1311).

Sanchez asserts that she has "direct and independent knowledge" of Defendants' wrongdoing because she was "employed by Defendants as an office manager from on or about November 7, 2006 until April 16, 2007 . . ." *Id.* at 2. In her capacity as office manager, she states that she had knowledge "of the billing records, patient records, employee files, calendars and appointment books, and other official records of Defendants." *Id.* Though Defendants claim that Sanchez did not have access to the information which provides the basis for her knowledge, at this stage, I accept Sanchez's assertions as true.

It is debatable whether the Complaint satisfies the "short plain statement" required by Rule 8. There is no question, however, that the pleading fails to satisfy Rule 9(b)'s "particularity" requirement. The Complaint merely incorporates general, conclusory allegations of fraud, which are

6

insufficient under Rule 9(b). *See U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 568-69 (11th Cir. 1994) (per curiam). The only specific facts that Sanchez proffers are the names of three defendants and the names of three LMTs. Arguably, this may satisfy the "who." Yet Sanchez fails to allege with any particularity the "what," "where," "when," and "how" of fraudulent submissions to the government. As Defendants note, Sanchez does not identify any specific patients, dates of service, dates on which false claims or certifications were submitted, treatments or services billed but not rendered, fraudulent bills that actually were submitted, or any payments received as a result of fraudulent billing and/or false certifications. *See* DE 19, p 14. It is well established that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). Although "[p]laintiffs need not prove their allegations in the complaint," they "must provide particular facts so the Court is not left 'wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.'" *Mitchell v. Beverly Enter., Inc.*, 248 Fed.Appx. 73, 75 (11th Cir. 2007) (quoting *Clausen*, 290 F.3d at 1313 & n.23). Further, "[u]nderlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government." *Id.* (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).

In her Response in Opposition (DE 24) Sanchez argues that the instant facts are similar to those presented in the unpublished case of *Hill v. Morehouse Med. Assoc., Inc.*, 2003 WL 22019936 (11th Cir. 2003).[7] In *Hill*, the Eleventh Circuit held that a former billing and coding employee of a medical care provider satisfied Rule 9(b) where her complaint claimed that she had firsthand

---

[7] As unpublished opinion, *Hill* is not binding precedent. Even if *Hill* were a published opinion, Circuit rules dictate that *Clausen* supercedes *Hill* to the extent that they are inconsistent. *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 n.15 (11th Cir. 2006).

7

knowledge that her employer submitted false claims. *Id.* at *5. Although the plaintiff alleged that "she could not identify patient names nor the exact dates the fraudulent claims were submitted to Medicare, because the confidential documents containing such information [were] in the exclusive possession of [the defendant]," the Eleventh Circuit found that the level of detail provided was adequate and plaintiff's firsthand knowledge provided the requisite indicia of reliability for her FCA complaint. *See id.* at *5.

*Hill* is readily distinguishable from the action at bar. In *Hill*, the plaintiff identified specific confidential documents, described the defendant's billing process, provided the specific CPT and diagnosis codes that were altered for each of the five alleged billing schemes, and detailed the frequency of submission of each type of claim. *See id.* at *4. In the instant case, the Complaint suffers from a dearth of information and precision.

The pleading at bar is more akin to those presented in *Shurick*,[8] *Corsello*,[9] and *Clausen*.[10] In *Shurick*, a former Boeing Company employee alleged that Boeing presented to the government false claims, obtained payment for those false claims, held and delivered less property to the government than reflected on a receipt or certificate, certified false claims, and conspired with Boeing's subcontractor to present false claims, all in violation of the FCA. *See* 2009 WL 1385928 at *1. The Eleventh Circuit upheld the dismissal of the employee's complaint, finding that he "[did] not allege with particularity the submission of a fraudulent claim to the government." *Id.* at 2. Similarly, in *Corsello*, the Circuit affirmed dismissal of a complaint where a salesman of home health care equipment and services alleged that the defendants were engaged in fraudulent Medicare billing. While the plaintiff had "provided "the 'who,' 'what,' 'where,' 'when,' and 'how' of improper

---

[8] *U.S. ex rel. Shurick v. Boeing Co.*, 2009 WL 1385928 (11th Cir. 2009).

[9] *Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005).

[10] *U.S. ex rel. Clausen v. Lab. Chem. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002).

8

practices," the Court found, *inter alia*, that "he failed to allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." 428 F.3d at 1014.  Finally, in *Clausen*, a laboratory technician alleged that the defendant had performed unnecessary tests and improperly billed Medicare and Medicaid beneficiaries.  *See* 290 F.3d at 1303.  The Eleventh Circuit concurred that the complaint was fatally flawed because Clausen failed to identify "any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government" and "relie[d] exclusively on conclusory allegations of fraudulent billing." *Id.* at 1311 (quoting the district court's opinion at 198 F.R.D. 560, 564 (N.D.Ga. 2000)).

As noted above, there are no specific facts regarding an actual fraudulent act; there are only general facts and conclusory allegations.  For example, at its most specific, Count One alleges that (1) Defendants were aware of the credentials of all employees, including LMTs Spodek, Kralick, and Ospina; (2) Sanchez "found documentation showing that much of the lymphedema treatment provided by [the] defendants was performed by LMTs and then billed to Medicare;" (3) "Defendants knowingly and intentionally submitted bills to the United States through the Medicare program for lymphedema services performed by [the three LMTs] as if these individuals were either [physical therapists] or [occupational therapists];" (4) "[t]he United States relied upon the representations of Defendants and paid the false bills" even though "such services . . . [were not actually] covered by Medicare." DE 15, pp. 5-7.

In Count Two, Sanchez's most specific allegations are that (1) "Defendants certified that they were in compliance with Medicare regulations each time a claim [for lymphedema therapy services provided by Ospina, Kralick, and Spodek] was submitted to Medicare for reimbursement;" but (2) "[t]hese certifications were false;" and (3) [a]s a result, the United States paid Defendants for claims which it would not have paid had Defendants been truthful." DE 15, pp. 7-8.

9

In Count Three, Sanchez incorporates the background paragraphs and simply adds:

> During the course of her employment, Relator learned that Defendants over stated [sic] the number of times units of therapy [was] provided to each patient. These actions were clearly taken to charge Medicare for therapy which was not provided. By taking this action the Defendants falsely obtained additional funds from Medicare.
>
> Defendants therefore billed Medicare for services not provided; the United States paid for lymphedema therapy services that were not rendered.

DE 15, p. 8.

In Count Four, after incorporating the background paragraphs, Sanchez states, in total: "Defendants failed to collect the copayments required by law for Medicare recipients. These actions were clearly taken with the aim of inducing more patients to come to operations run by the Defendants as opposed to the competitors of these operations." *Id.* Sanchez's Complaint cannot proceed, as "[t]he particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *Atkins*, 470 F.3d at 1359 (citations omitted). Like the pleadings in in *Shurick*, *Corsello*, and *Clausen*, Counts One through Four of this Complaint are insufficient under Rule 9(b) and shall be dismissed.

### ii. Count Five Fails to State a Claim

In Count Five of the Complaint, Sanchez alleges that Defendants discharged her in violation of 31 U.S.C. § 3730(h), which prohibits retaliation against employees engaged in the protected activity of investigation possible fraud against the United States government. To establish a cause of action under § 3730(h), a plaintiff must prove that (1) she was engaged in a protected activity; (2) her employer knew about the activity; and (3) the employer discharged or otherwise discriminated against her as a result of the protected activity. *See McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 514 (6th Cir. 2000) (citations omitted). Section 3730(h) protection is available both where a false claims action is actually filed and where the filing of such action is "a distinct possibility" at the

10

time the employee's assistance was rendered. *See Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996).

Here, Sanchez vaguely cites "her attempts to stop Defendants' illegal actions" as the primary reason for her termination, (or, alternatively, as one reason for her termination), alleges that Pamela Cohen knew about the "action [Sanchez took] to rectify the situation," and avers that "[a]t all times during her employment, she performed at a level that met or exceeded the legitimate expectations of other employers." DE 15, pp. 8-9.   There are insufficient allegations to suggest that Sanchez was engaged in a protected activity; there are no facts indicating that the filing of a FCA action was a "distinct possibility" at the time that Sanchez was allegedly investigating fraudulent actions by Defendants.   Moreover, Sanchez has made conclusory statements but failed to articulate facts demonstrating a causal link between any alleged protected activity and the termination of her employment.   Thus, Count Five of Sanchez's Complaint fails to state a claim for which relief can be granted.

### IV. Conclusion

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE 19) is **GRANTED**.   This case is **CLOSED**, and all pending motions shall be **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this ___21___ day of July, 2009.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to counsel of record.

11